United States District Court
District of Massachusetts

```
_____
                               )
UNITED STATES OF AMERICA       )
                               )
        v.                     )
                               )   Criminal No.
EDDY DE LOS ANGELES,           )   11-10202-NMG
        Defendant.             )
_____)
```

**MEMORANDUM & ORDER**

**GORTON, J.**

On May 25, 2011, an indictment was returned charging Eddy De Los Angeles with being present in the United States without the express consent of the Secretary of the Department of Homeland Security, after having been deported from the United States on July 28, 2010, in violation of 8 U.S.C. § 1326. Currently pending before the Court is defendant's motion to suppress evidence of his identity on the grounds that it was the product of an unlawful search.

**I.  Background**

On May 2, 2011, Trooper Edward Troy of the Massachusetts State Police was on routine patrol on Route 38 in Lowell when he observed a white BMW parked in a McDonald's parking lot and recognized the driver as Walter Valentin, a known drug trafficker. Trooper Troy witnessed the defendant, who had been sitting in the passenger seat of the BMW, get out of the car carrying a large

green bag and enter a van which Trooper Troy recognized as one used to shuttle people between Lawrence and New York. After following the van for a short distance, Trooper Troy pulled it over and asked to speak to the defendant. When asked if he was carrying anything illegal, the defendant ultimately admitted that the green bag in his possession contained one kilogram of marijuana. The defendant, who had on his person an expired permanent resident identification card identifying him as "Eddy De Los Angeles Rosario," was arrested and fingerprinted. The prosecution seeks to use those fingerprints against the defendant at trial.

## II. <u>Motion to Suppress</u>

### A. **Standard**

It is an open question whether identification evidence such as a defendant's fingerprints is ever subject to suppression as the fruit of an illegal search. In addressing a jurisdictional challenge to a civil deportation hearing, the Supreme Court suggested the answer when it stated generally that:

> The 'body' or identity of a defendant . . . in a criminal or civil proceeding is <u>never</u> itself suppressible as a fruit of an unlawful arrest, even if it is conceded that an unlawful arrest, search, or interrogation occurred.

<u>I.N.S.</u> v. <u>Lopez-Mendoza</u>, 468 U.S. 1032, 1039 (1984). Nevertheless, because the statement was <u>dictum</u> and the Supreme Court later tempered it by noting that the case did not present "egregious violations of Fourth Amendment or other liberties,"

-2-

id. at 1050, lower courts remain divided on the issue.

The majority of federal courts of appeals, relying on the above-quoted language, hold that neither identity nor records establishing identity are subject to suppression under the exclusionary rule of the Fourth Amendment. See United States v. Bowley, 435 F.3d 426, 430–31 (3d Cir. 2006) ("[W]e doubt that the Court lightly used such a sweeping word as 'never' in deciding when identity may be suppressed as the fruit of an illegal search of arrest."); United States v. Del Toro Gudino, 376 F.3d 997, 1000-01 (9th Cir. 2004) ("[T]he simple fact of who a defendant is cannot be excluded, regardless of the nature of the violation leading to his identity."); United States v. Farias-Gonzalez, 556 F.3d 1181, 1185 (11th Cir. 2009) (holding that exclusionary rule did not require suppression of defendant's fingerprints in illegal re-entry prosecution); United States v. Roque–Villanueva, 175 F.3d 345, 346 (5th Cir. 1999); United States v. Navarro–Diaz, 420 F.3d 581, 588 (6th Cir. 2005); United States v. Garcia-Garcia, 633 F.3d 608, 616 (7th Cir. 2011).

A minority of federal courts of appeals have held that fingerprint evidence, although ordinarily not subject to suppression, must be suppressed if obtained "by exploitation" of the initial police illegality. See United States v. Olivares–Rangel, 458 F.3d 1104, 1111 (10th Cir. 2006); United States v. Guevara–Martinez, 262 F.3d 751, 754-55 (8th Cir. 2001); United

States v. Oscar-Torres, 507 F.3d 224, 230 (4th Cir. 2007). In other words, if the arrest is effected for the sole purpose of ascertaining a suspect's identity without a warrant or probable cause, fingerprints obtained as a result must be suppressed.

While the First Circuit has yet to weigh in, the issue has been explored by another Session of this Court. In United States v. Sandoval-Vasquez, 519 F. Supp. 2d 198, 200 (D. Mass. 2007), District Judge Stearns concluded, along with the majority, that when the Supreme Court said "never," it did not mean "sometimes or even hardly ever." He went on to point out, however, that, as a practical matter, it is unclear whether the division of authority has any real significance in illegal re-entry cases such as this where the evidence sought to be suppressed can be obtained at any time:

> Because [illegal re-entry] is a continuing violation, even if the Court were to suppress all evidence of [the defendant's] identity and dismiss the indictment against him, upon his setting foot outside the courtroom, he would again be in violation of the statute, as he would still be a person "found" in the United States without authorization after a prior deportation. Upon being arrested by immigration authorities, [the defendant] would again be photographed and fingerprinted without any hint of unlawfulness.

Id. at 201 (internal citation omitted). Finding that "[e]mpty gestures do not further the primary purpose of the exclusionary rule," the Court denied the defendant's motion to suppress. Id.

### B. Application

This Court need not decide whether evidence of the identity

-4-

of an accused is ever suppressible in a criminal case, nor must it assess whether the stop and seizure here was consistent with the dictates of the Fourth Amendment, because it is evident that suppression of the defendant's fingerprints would not further the deterrent purpose of the exclusionary rule.  Reasonable officers in Trooper Troy's position would presumably stop suspects believed to be carrying large quantities of drugs regardless of whether their fingerprints might be suppressed in non-drug-related prosecutions.

Even if this Court were to take the minority position that fingerprint evidence is suppressible when an arrest is exploited for the primary purpose of obtaining a suspect's fingerprints, that consideration is not relevant here.  Unlike the defendant in Olivares-Rangel, who was arrested by border patrol agents for the sole purpose of determining whether he was residing illegally in the United States, 458 F.3d at 1106, De Los Angeles was stopped because Trooper Troy had reason to believe, correctly as it turned out, that he possessed a large quantity of drugs earmarked for sale in New York.  He was fingerprinted at the station as part of a routine booking procedure and his fingerprints were not the primary evidence connecting him to the crime for which he was arrested.

Finally, as District Judge Stearns recognized, illegal re-entry is a continuing offense for which the police can arrest the

defendant as soon as he leaves the courtroom and, therefore, suppression of a defendant's fingerprints in a case such as this would be nothing more than an "empty gesture." Sandoval-Vasquez, 519 F. Supp. 2d at 201.

**ORDER**

In accordance with the foregoing, defendant's motion to suppress (Docket No. 18) is **DENIED.**

**So ordered.**

/s/ Nathaniel M. Gorton
Nathaniel M. Gorton
United States District Judge

Dated May 8, 2012